UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

DANIEL KEITH HASLAM,            )
                                )
                Plaintiff,      )
        vs.                     )    1:04-cv-777-DFH-WTL
                                )
JASON S. PAGE, et al.,          )
                                )
                Defendants.     )

**Entry Discussing Motions for Summary Judgment**

For the reasons explained in this Entry, the defendants' motions for summary judgment must be **granted.**

**Discussion**

The parties in this action are plaintiff Daniel Keith Haslam ("Haslam"), and defendants Jason Page ("Trooper Page"), an Indiana State Police Trooper, and Brannon Carpenter ("Officer Carpenter"), formerly an officer with the Kokomo Police Department. The defendants seek resolution of Haslam's claims against them through the entry of summary judgment. *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) ("Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'")(quoting Rule 56(c) of the *Federal Rules of Civil Procedure*).

The evidentiary record supporting the defendants' motions for summary judgment shows the following: On April 30, 2002, at approximately 3:10 p.m., Trooper Page observed a green Jeep Cherokee driving recklessly in Kokomo, Indiana. Trooper Page observed the Jeep going back and forth in westbound lanes, without signaling, and forcing several motorists to brake in order to avoid a collision with the Jeep. Trooper Page activated his emergency lights and siren to stop the driver. He noticed that the driver was not wearing a seat belt. The driver did not stop for several blocks, but eventually pulled over. The driver was directed to back up his vehicle so that he would be parked in front of Trooper Page's police vehicle. As Trooper Page approached the Jeep, the driver, plaintiff Haslam, demanded to know why he was stopped. The driver produced a driver's license and vehicle registration.  When Trooper Page walked back to his vehicle to issue Haslam a citation, Officer Carpenter arrived on the scene. Trooper Page spoke briefly with Officer Carpenter and informed him that the driver of the vehicle had appeared agitated during Trooper Page's initial contact with him.

Officer Officer Carpenter pulled onto Armstrong Street to observe Haslam from a distance, while Trooper Page completed the traffic stop and issued a citation. As Trooper Page was writing the citation from within his vehicle, he noticed Haslam becoming increasingly agitated in his vehicle. After a few minutes, Haslam exited his vehicle, stood in the roadway assuming an aggressive posture, and began yelling at Trooper Page, starting to walk toward Trooper Page's vehicle. East - and westbound traffic had to stop because of Haslam's obstruction in the roadway. Trooper Page exited his vehicle, as the scene appeared to be escalating, and unholstered his sidearm, holding in the low ready position so that he could still observe Haslam, and at the same time ordered Haslam to get back into his vehicle. Trooper Page repeatedly ordered Haslam back into his vehicle, but Haslam refused to comply with these orders and continued to yell and scream at Trooper Page from the middle of Markland Avenue. At this time, Officer Carpenter approached Haslam and administered a short burst of chemical spray. However, Haslam averted his head and was not affected by the chemical burst. Officer Carpenter then approached Haslam and took him to the ground using a straight arm takedown. Officer Carpenter arrested Haslam for resisting law enforcement and placed him in handcuffs. Officer Carpenter transported the plaintiff to the Howard County Jail. At no time during the course of the incident did Trooper Page touch Haslam, other than to help him up off the ground after he had been handcuffed by Officer Carpenter.

The use of force by Officer Carpenter was consistent with the training he had received at the Kokomo Police Department, whereby officers are directed to gain control of a situation and a subject through a continuum of force or a series of steps. The first such step is to simply be on the scene. The second such step is verbal direction. The next such step is to use a chemical spray to attempt to gain control of the subject. The fourth step is to use physical movements and force to control the subject. That is the step that was reached in the encounter between Haslam and the defendants on April 30, 2002.

From this encounter, Haslam claims that his federally secured rights were violated by being subject to an unlawful stop, to an unlawful arrest, and to the excessive use of force in the course of an arrest. Haslam also alleges that he was not read his *Miranda* rights, that the defendants' treatment of him amounted to unlawful discrimination, and that he was the victim of defamation during the encounter.

Haslam's claims are asserted pursuant to 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

Trooper Page's observation of the reckless, dangerous and improper movement of the Jeep on the streets of Kokomo indicated to him that the Jeep constituted a hazard to other traffic and that the manner in which it was being operated violated various traffic laws. This justified the initial stop of the vehicle. *Whren v. United States,* 517 U.S. 806, 810 (1996) (decision to stop and detain motorists is reasonable where there is probable cause

to believe that a traffic violation has occurred). Because Haslam was not wearing a seat belt, and because this was observed by Trooper Page, Trooper Page also had probable cause to issue a traffic citation to Haslam.  Haslam's aggressive and improper behavior supplied Officer Carpenter with probable cause to arrest Haslam for resisting law enforcement.

The lawful arrest of Haslam justified the use of force by Officer Carpenter necessary to effectuate the arrest, for a police officer's ability to make a stop or an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396 (1989). The force used in making the seizure in this instance was not objectively unreasonable. *Id.* at 395 ("[A]ll claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."); *Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 592-93 (7th Cir. 1997) (where an offender is resisting arrest, an officer can use that amount of force necessary to overcome the offender's resistance), *cert. denied,* 522 U. S.  1116 (1998). Trooper Page did not use physical force against Haslam. Officer Carpenter did, but in doing so used only that minimum force that was objectively necessary and reasonable under the circumstances to gain control of the plaintiff.

Accordingly, the Fourth Amendment claim for the excessive use of force is without merit under the circumstances, and the plaintiff has not argued otherwise. The plaintiff's remaining claims are likewise subject to resolution through the motions for summary judgment because the claims themselves are inapplicable to the situation confronted by both the plaintiff and the defendants.  The Eighth Amendment's proscription against cruel and unusual punishment does not come into play until and unless there has been a conviction. *Ingraham  v. Wright,* 430 U.S. 651, 671-72 n.40 (1977). The failure to give *Miranda* warnings does not create liability under § 1983 where there has been no use of the statements made. *Chavez v. Martinez*, 538 U.S. 760 (2003) (the act of coercing a statement from a suspect, in and of itself, is not an act in violation of the Fifth Amendment self-incrimination clause upon which a § 1983 claim may be predicated); *Lingler v. Fechko,* 312 F.3d 237, 238-40 (6th Cir. 2002) (finding no Fifth Amendment violation sufficient to sustain a § 1983 action where police officer-employees who had made incriminating statements in compulsory interviews with superiors were never prosecuted). The claim of discrimination is unsupported by any circumstances supporting an inference that the plaintiff was mistreated or simply that he was treated differently on the basis of his membership in a protected class. *Huebschen v. Dept. of Health & Social Serv.,* 716 F.2d 1167, 1171 (7th Cir. 1983) ("A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual. 'The decision-maker [must have] selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.'") (quoting *Personnel Adm'r v. Feeney,* 442 U.S. 256, 279 (1979)). A claim of defamation is legally insufficient unless accompanied by a showing that there has been a deprivation of a protected interest. *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (derogatory remarks do not constitute a constitutional violation).

Summary judgment is, in a rough sense, "the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). Haslam, as the non-movant, has doomed his case by not coming forward with a genuine question of fact for trial. *Liberles v. County of Cook,* 709 F.3d 1122, 1126 (7th Cir. 1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."). "Summary judgment is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgment must be granted." *Jones v. Johnson,* 26 F.3d 727, 728 (7th Cir. 1994), *cert. granted* 513 U.S. 1071 (1995). That is precisely the situation with respect to the present case, and the defendants' motions for summary judgment must therefore be **granted**.  Judgment consistent with this Entry shall now issue. The costs of this action are assessed against the plaintiff.

So ordered.

                                                                DAVID F. HAMILTON, Judge
                                                                 United States District Court

Date:   8/29/2005